May it please the court. I'm Josiah Parker appearing on behalf of the plaintiffs in this case. The plaintiffs appealed from two lower court orders. One was an order granting Northrop's motion to dismiss, and one was an order denying plaintiffs' motion to file an amended complaint. I'll take the first order. The upshot of the court's order granting defendant Northrop's motion to dismiss was that a plaintiff's complaint failed to allege a cause of action under the California Supreme Court holding of Bockrath v. Aldridge Chemicals, a 1999 California Supreme Court opinion. Plaintiffs believed that the lower court erred in granting the defendant's 12B6 motion on the basis of this authority for the simple reason that Bockrath is a case that deals with how to properly allege a product liability claim under California law, and plaintiffs' allegations subsumed more than product liability claims. They also subsumed a premises liability claim and a claim based on negligent services. I'm a little surprised that you would start with the dismissal rather than the denial because you think you fixed everything, right? Correct, Your Honor, and I can get to that. You can do it any way you want, but if you think you fixed everything in the First Amendment... Yes, okay, let's go to that. So plaintiffs do believe we fixed everything in the First Amendment amended complaint. The upshot of the court's holding in denying our request to file an amended complaint was that it would have been futile to allow us to do so because our proposed amended complaint didn't repair the defects that were present in the originals. Specifically, according to the court, we failed to meet Bockrath's injunction to identify each product that allegedly caused the plaintiff's injury. It's plaintiff's position that that's incorrect because Bockrath does not require more than identifying the categories of defective products to which the plaintiff was exposed. In other words, the case doesn't require that the plaintiffs identify products by manufacturer, by part number, or by any other specific indicia other than the category of the product. And there are a couple comments within the Bockrath decision that are suggestive in that regard. At pin site page 77, the court says, The plaintiff's suit named at least 55 defendants, including manufacturers of common products such as WD-40 and rubber cement, and he alleged that the disease arose through his exposure to harmful substances in these products. The court didn't have a problem with the plaintiff's allegation that he was exposed to rubber cement. In the decision, the court's issue with the plaintiff's allegations was he didn't connect the defendant to a product and then the product to a specific toxin that caused his disease. Can I just ask you just a second just to back up for a little bit? Because I don't know if you're talking about the products liability claim right now. Are you talking about the products liability claim? Yes, Your Honor. It seems like, you know, these kind of claims are more understandable for premises liability. I'm trying to figure out why, if you are pursuing these claims against Northrop for products liability, why did you drop the people who actually produced and manufactured these items? It's interesting to me because it seems like your claims are based only on Northrop's use of asbestos-containing products, and here it doesn't look like Northrop itself manufactured a defective asbestos-containing product. So I'm just trying to figure out how that products liability claim can be premised only on a company's use of the defective products in the course of its business. Thank you, Your Honor. Yes, California law subscribes to a stream-of-commerce theory for attributing product liability to a defendant. So under that ambit, a defendant can be liable if certain policies apply to their position with respect to a product within the stream of commerce. That position can be that they manufactured it, that they designed it, that they marketed a product, that they leased it. So it's very broad. What's your best authority on that? Because it seems interesting to me because when you did try to rectify your complaint, you dropped all the people out who actually did... Manufactured, designed, etc. Yes. So I don't understand. What's your reasoning there? My understanding as to why that happened was that my office was trying to focus specifically on the defendant we think that we have the strongest case against. For premises liability. Well, for premises liability, but we also believe we have a case against it under California law for product liability because we believe that in purchasing these various airline products that were defective and using those products in the construction of their aircraft, they were profiting off of it. And we believe that the authority supports... Give me your best authority on that. Oh, sure, Your Honor. We didn't cite this in our papers, but... Interesting. Go ahead. The California Court of Fourth Circuit, or excuse me, Fourth District Court of Appeal decision of Bay Summit Community Association versus Shell Oil Company sets... And you can just send us a letter, a 28-J letter? No, Your Honor. Okay. All right. This is 51 Cal App 4th 762. And in this case, the court sets forth a number of public policy factors for determining whether or not a company can be in the stream of commerce for a product that it neither manufactured nor sold. The facts before that court was that Shell Oil Company marketed a defective plumbing system. That's all it did was it marketed it. And the court found that because it was profiting off of the marketing of this defective plumbing system, that it was sufficiently connected to the defect to have product liability law apply to it. Marketing sounds like an awfully active verb within the context of the stream of commerce. Does that mean selling? No, it didn't. For sale? No, it wasn't. Supporting the sale of? Maybe supporting the... Advertising? Yes. Yes. Yes. Pretty active. Right, Your Honor. And we believe that purchase... There's another case, too, Hernandez Cueva v. E.F. Brady Co., Inc. It's a 2015 case, 243 Cal App 4th 249. In that case, a subcontractor was found strictly liable for supplying defective asbestos-containing drywall in the undertaking of its contracts. And the supply wasn't that it was giving it to a third party. It was actually using this stuff pursuant to a general contract, and the plaintiff was exposed as a bystander. Halfway through your argument, you still haven't mentioned Kessler. Oh, sure, Your Honor. The lower court didn't sustain the 12b-6, or excuse me, grant the 12b-6, or deny plaintiff's request to file an amended complaint on Kessler, but I can address that. The state of California law prior to Kessler was that it was an open question as to whether an employer owed a duty of care to the family members of employees to prevent their take-home exposure to asbestos. To prevent their exposure to asbestos brought home on the persons of their employees. That was an open question in California law. There was split authority on that issue. California Supreme Court brought granted review on two cases, Kessler v. Superior Court and Haver v. BNSF Railway. And in the California Supreme Court decision, they expressly disapproved of the Campbell Court's analysis. Campbell found that an employer owes no duty to the family members of employees to prevent their take-home exposure to asbestos. The court found, Kessler court found to the contrary, that a proper analysis of the public policy factors the court looks to in determining whether to accept a category of cases from the usual duty of care supports, and this is a direct quote, supports the conclusion that defendants have a duty of ordinary care to prevent take-home asbestos exposure. And the court went on to find that this is true whether the plaintiff's theory sounds in premises liability or general negligence. So we believe Campbell does not stand as authority which would prevent a plaintiff's premises liability or their negligence claims in this case. And so to the extent that this court would have been otherwise inclined to uphold the lower court's decision on Campbell, Kessler stands as authority against that. I'll reserve my time. I just have one question before you reserve. If you survive this, I have a jurisdiction question because it appears the only basis for removal to federal court was United Technologies Corporation's ability to, you know, was part of it. But I don't know, it doesn't seem like that company is no longer a party to the lawsuit. Would there still be federal jurisdiction? Your Honor, off the top of my head, I don't know on what basis United Technologies removed. I don't know if it removed on federal officer defense or if it removed based on diversity jurisdiction. So I'm not sure the answer to that. Thank you, Your Honor. May it please the court. Daniel J. Kelly of Tucker Ellis on behalf of Northrop Grumman Systems Corporation. And I think I can address a couple of the issues. There are two causes of action that were alleged, two general theories. And the primary problem that we saw with the original complaint and with the proposed amended complaint is that the plaintiffs tried to lump together products liability claims and premises liability claims. And by alleging that everyone did everything, they resulted with a very vague pleading that didn't say anything about anyone in particular. And I think it's very clear that the original complaint didn't state a cause of action under either theory. And most specifically in asbestos product liability cases is that product identification is the starting point. Well, what are you requiring, though? I mean, because it seems like you take issue with the fact that plaintiffs only identified defective products in their complaint by using terms like engine, adhesives, or valves. And, you know, you kind of characterize them as broad generic categories. But I'm not quite sure what our plaintiffs are supposed to do in these kinds of cases and what kind of specificity should we require. I'm not sure that we're supposed to require that they use the brand name or the model number or serial numbers. What is it that you're – what's the mark there? I think the idea here is identifying a product with enough specificity so that the person who manufactured or sold that product understands that's what the claim is. So what should they have put here? So in the original complaint, if they had said that Northrop Grumman manufactured military aircraft, then they'd be talking about a Northrop product. Now, what they did identify was a lot of other products that were present at – allegedly present at the Northrop facilities. Now, in talking about facilities – and this is why these two kind of come together a bit – in talking about facilities, they said various facilities throughout California, southern California, without any specificity of the actual locations. So – and in the allegation of the complaint, of the original complaint, they did say that certain entities manufactured brakes, certain entities manufactured engines, certain entities manufactured other equipment. And that would be sufficient if they were talking about a claim against those particular entities. When they got around to Northrop, the basic idea was because all these other products we believe were present somewhere at a Northrop facility, that means Northrop is now responsible for all of those products under a products liability claim. And that's why it's very important that it does not state a products liability claim and a consumer of a product, if you assume that Northrop bought a product and used it, that that is not – that does not make Northrop strictly liable for that product that they bought. What about the premises liability? Now – and that's why I think it's important to keep track of these as a separate way. On the premises liability claim, if an asbestos product is present on a – in a particular location, and it then is – if it's just merely present there, under California law, that's not a defect, it's not a dangerous condition, it's nothing. It's only when it becomes disturbed or otherwise the fibers are released from that product that it can become a dangerous condition. And I think it's very important that when we first brought the motions, it was based on the authority of Campbell, which Kessner has disavowed. But the important ruling in the Kessner decision from the California Supreme Court is that active users and industrial users of asbestos on their premises in the mid-1970s are held to know that that could create a potential exposure that – a third-party exposure that then on the close could be carried home. Because that's what the – the gravamen of this claim is it's a take-home exposure claim that workers at Northrop then got dust on their clothes and took them home to the Mays family home. So the important thing there, though, is the fact that even in Kessner they talk about they weren't making a decision about a passive consumer of asbestos. That wasn't the allegations. In Haver, which was the Burlington Northern BNSF case, they talked about the allegations were, and they had to accept those as true, the court had to accept those as true, was that the railroad was actively using asbestos in its production of locomotives and other work in the yards. And that the employee who was working with them was actually working with those products, and therefore dust got on their clothes. Now, in this case, the allegation is that – and this was not in the original complaint, but in the amended complaint, which I'm focusing on because I don't believe the amended complaint fixed the problems from the first complaint – was that Titus May, a locksmith, worked at Northrop in various locations. And then the amended complaint lists a number of locations, but never says what he was doing and how that disturbed asbestos and how that asbestos got on his clothes as a locksmith. And I think it's very important that once you get – You think that would be necessary to survive a 12B6? Absolutely, because I think – How can that be? Because if you're talking about a premises liability case, you have to allege a condition. You have to allege that there was something that was dangerous. And the plaintiffs and the appellants in their briefs talk about a spilled water or spilled milk on the floor and that everyone knows that that's a dangerous condition. And you, as an owner of a premises, can understand that that could be dangerous. Someone could slip on that. The difference here is by just saying that products were present, without connecting the – Well, but they – look at what they say. I mean, it seems like in the first amended complaint, it states Northrop all under controlled the relevant premises where Mrs. May's family members worked. Northrop failed to take reasonable precautions to prevent air bone asbestos at the premises. Northrop was or should have been aware of the dangers of air bone asbestos, and Northrop failed – failure to reasonably protect its employees from air bone asbestos exposure and to protect its employees from carrying asbestos home on their clothes ultimately caused Mrs. May's injury. I just – you're saying that's not sufficient? Those are conclusions. Well, but they have the facts. They have the facts to support it. You look at Northrop for the first one, and I'm looking at ER 46-94, paragraph 9. It says, Mrs. May's husband, Titus May, worked for Northrop as a locksmith between 1956 and 1994, and her daughter Marjorie had various jobs, duties at Northrop, including security documentation. The first amendment complaint identifies the address, specific facilities, and performed their duties and alleges that Northrop controlled these premises. They go on, on paragraph 78, paragraph 80, paragraph 37, to say that he, as a locksmith, he regularly cut, disassembled, removed, tore apart, and otherwise manipulated asbestos-containing fire doors, which caused asbestos to get into the air. I mean, how much more do you want them to connect the dots? Well, I think, most importantly, that's the closest they come to an allegation of a fire door being present on a Northrop premises. And the question is, they say the relevant premises without saying where those are. There's a listing of Edwards Air Force Base. That doesn't sufficiently identify, especially, it doesn't identify the location, and when you talk about a career from 1956 to 1979, this is one where the plaintiffs know where they worked. So, I don't think they have to absolutely identify every specific thing, but if someone says, I was a locksmith and I was working on fire doors, he should know where it was he was working. And when you put it all together and say, somewhere in Southern California, he was working on fire doors, it becomes that much more difficult to state a cause of action as to, even if he's working on a fire door, unless the allegation is that that fire door contained asbestos, Northrop knew it contained asbestos, Northrop knew that the dust was coming out, and I would suspect, too, that the allegations would be later in time, because there is a continuum of time where, even if it's present and even if it releases fibers, that's not a premises liability claim. It's not a strict liability claim just because there are products that are present on the premises. And I do think, that's why I believe that they are closer on the premises liability claims, but the idea that Northrop, as an entity that has products that are on its premises, thereby becomes strictly responsible and strictly liable as if it were actively marketing or selling or in the stream of commerce, that is not a case that has been alleged, a claim that's been alleged properly in either place. So I would urge, I believe that the trial court was correct in determining that the product liability claims cannot lie under these facts as alleged. And on the question that the court had asked about the reason for removal, it was removed under federal officer liability, but now that the only defendant that's left is Northrop, there is diversity. So it still belongs in federal court. I would also add on, Hernandez Cueva was a case, a fairly recent case, that talked about an entity that was in the business of building facilities, and they used drywall that contained asbestos. The argument was they were a service provider, they weren't selling that product, but because they were so closely associated with bringing that product in and installing it somewhere, they were held strictly liable. That doesn't mean that if a fire door is purchased and installed on the premises at Northrop somewhere, that Northrop then becomes strictly liable for that fire door. So I believe that that addresses the primary issues that we've said. I think the court, certainly in the first instance, found that the original complaint did not state causes of action for either, and I believe that they were not corrected in the amended complaint as to the premises liability because we do know that the plaintiffs themselves have specific information about where they worked and when they worked there, and it does make a difference under Kessner. Although before Kessner came down, there was no duty, so therefore you really didn't have to get into the details. Because the plaintiffs have this information, and they're not working with a totally clean slate because they have alleged already what products were there and who manufactured them. If they're claiming that as a locksmith, Mr. May encountered certain products, they should be able to say at least in a general way when and where. And right now, because Northrop Grumman is a large corporation, and there's a number of these facilities that are no longer owned by Northrop, and so it's important to know where these claims are coming from because if they're older in time and it's just that they happen to be in the same place, that's not sufficient. So to connect those dots, they do need to be a little more specific about it. With that, I'll submit, Your Honors. Thank you. Thank you, Your Honors. I'd just like to address a couple points that counsel made. First, he made the point that there just simply wasn't enough specificity in our complaint, our proposed amended complaint, for them to know the products that we were attempting to hold them accountable for as an aircraft manufacturer. It's our position that that's simply not correct, that the categories of products that we say in our complaint are defective were sufficient under BOCRATH. Counsel said that simply having the products on their facility isn't enough to hold them liable under a product liability theory. Counsel mentioned Hernandez Cueva. This was a contractor who was supplying products while it was doing a service, and he mentioned that, in that case, they were closely connected enough with facilitating the presence of these defective products on the market for them to be held liable. In that case, they weren't a manufacturer, they weren't a designer. We believe that an analogous analysis would apply to their purchase of defective products and use for profit of those products in building their aircraft to hold them liable under a product liability theory under California law. The second claim that counsel made was that Kessner somehow required active work with a defective product in order for its duty analysis to apply. That's not correct. Kessner does not require that a plaintiff actively work with asbestos on premises in order for the premises owner to be liable under a premises liability theory. Third, counsel said that we didn't allege the mechanism of exposure with enough specificity in order for a claim to lie. In that regard, I'd like to just cite to the court, which was provided in our reply papers, the case of Douglas v. 3M Company, 181 F sub 2nd, 1248. In that case, the court said, this is a direct quote, that a specific product released asbestos fibers in the course of its use and without warning, according to Mr. Douglas, adequately describes a defect in the product and in its design and therefore is a sufficient... That's a district court case? Yes, Your Honor. Which district? It's Florida, Your Honor. And finally, counsel says that we didn't give enough information on the location of the alleged exposure to asbestos in a Northrop facility. Paragraph 10 of our proposed amended complaint lists with detail and addresses the Northrop facilities where the plaintiff worked. And with respect to identifying which specific of those facilities he was exposed to, which specific defective product, I'd like to cite the court to Wayland v. General Electric Corp. It's a 2014 Northern District of California opinion. And in denying a 12B6 motion in that case, which was an asbestos personal injury case, premised on the plaintiff's exposure to defective asbestos parts in submarines, the court says, to require plaintiffs to know exactly which vessels the defendants worked on or which vessels led to plaintiff's asbestos exposure is to add too much at this stage of the litigation. These facts will most likely be found in defendants' own records, and plaintiffs are not required to plead them with such specificity. We believe that the same applies to the specific Northrop locations to which the plaintiff was exposed to asbestos, and we therefore believe that our complaint was sufficient to give them notice of the nature of our claims. And on that, Your Honor, I'll submit. Thank you. Thank you. Mr. Parker, Mr. Kelly, thank you both for your helpful arguments here today. The case of May v. Northrop Grumman is now submitted.
judges: Schroeder, Murguia, Davis